RuffiN, C. J,
 

 Henry Delamothe, a native of France and naturalized citizen of the United States and a resident of Montgomery county, being seized of a valuable real estate, and also entitled to a number of slaves and other considerable personal property, made his will bearing date the 10th day of September, 1838, and died shortly thereafter. By that instrument, he devised to B. Delamothe, then his wife, a tract of land during her natural life, and bequeathed to her one third of his slaves and other personalty. To two children, who had been born during the coverture, and to any others who might be born, the will gives gives
 
 “
 
 fifty cents each and no more.”
 

 To F. A. Delamothe, a brother of the testator residing with him, there are given some small specific legacies, the sum of $100 and an annuity of $150 per annum during his life.
 

 To Mary C. Kron, a niece of the testator and the wife of Francis J. Kron, he gives a legacy of $1000, and also an an. nuity of $100 per annum during her life; and to each of their children then born or that they might afterwards have, is given the sum of $1000, to be paid to them respectively,
 
 *60
 
 with interest from the death of the testator, when they shall attain 21 years. At that time Mr. and Mrs. Kron had two children, who were bom in this State, and are still] infants; and no other has as as yet been born.
 

 Then comes the following clause:
 
 “
 
 I give the balance or residue of my property to my executor in trust for the benefit of my sister Quenet’s grand-chrildren by the name of Fo-restier, to be paid to any one of them who should apply for the same, subject, however, to the payment of the legacies made in this will, and, moreover, obligatory to them to the payment of $> 100 yearly to their grand-mother Quenet during her life, and after her decease, the same sum of $ 100 to be paid to their own mother yearly, also during her life. But should no one of my sister Quenet’s grand-children or any one duly authorised legally to receive the above property in their behalf apply within two years from the time of my decease, then the above property to revert unto Mary C-Kron’s children and be distributed equally among them, subject, however, to the legacies herein mentioned.” By a subsequent clause the testator directs, that, after allotting his wife’s share, his executors shall hire out his slaves, except one family, consisting of a man by the name of David and his wife and their daughter Charity and her four children; and in respect to that family, he directs that they shall be put in possession of a certain piece of land, and “there live together, provided that David and all his family support themselves, without any cost to the estate; and in order that he may be able to accomplish this task, I desire that he should enjoy the product of that farm, with the labor of himself, his wife and daughter Charity and Charity’s children, until the children attain the age of 21; and then that Charity’s children be returned into the common stock, as every one of them attains the age of 21.” The will then gives David and his wife, for the support of their family, some provisions, a horse, some farming stock and utensils, and directs that they shall “remain in possession of that land during their natural life, free from all incumbrances.” And the present plaintiff is appointed executor.
 

 
 *61
 
 The testators’s sister Q.uenet and her daughter, Mrs. estier, were born and reside in Paris, in the kingdom of France; and Mrs. Quenet’s grand-children, by the name oí Forestier, wer-e six children of Mrs. Forestier, who were also natives of Paris, and have ever resided there. Within two years after the death of the testator, an agent of Mrs. duenet, Mrs. Forestier and of the six children of the latter, duly authorised by letters of attorney to receive the estates and interests, to which those parties were respectively entitled under the will, applied to the executor for the same; Mrs. Quenet and Mrs. Forestier obliging themselves respectively to dispense the executor from retaining any part of the estate as a fund to secure the annuities to them, and autho-rising him to pay the whole to the common agent, and reserving only the right of arranging personally with the legatees, Mrs. Forestier’s children, to secure their annuities upon the funds sent to them in France.
 

 This bill is fded by the executor against the testator’s widow and her Uvo children, against Kron and wife and their two children, and against Mrs. duenet, Mrs. Forestier, the six children of Mrs. Forestier,and the Trustees of the University; and it asks a construction of the will, and that the plaintiff may administer the estate and account under the direction of the Court. The points upon which the assistance of the Court is asked, are: First, whether the reversion of the land devised to the wife for life vests in the heirs at law undisposed of, or is included in the residue given to the plaintiff in trust. Secondly, whether the alienage of the testators’s sister, niece and great nephews and nieces, resident in France, excludes them or either of them from the benefit of the dispositions in their favor in the personal and real estate of the testator, or either of them; if so, whether the same belongs to the heirs at law, the Trustees of the University, or goes over under the limitation to Mary C. Kron’s children: whether the application to the executor on behalf of those French subjects, by attorneyj is sufficient within the provision of the will, or ought to have been made by them or some of them personally; and by what mode the pecuniary legacies and annuities are to be raised or secured.
 

 
 *62
 
 All the defendants have put in answers, and submit the questions raised in the bill.
 

 The Court has no difficulty in pronouncing that the vvi-ant* °f fhe testator have no right to any part of the estate, except as particular
 
 gifts
 
 are made to th em respectively in the will. The paper begins with a declaration that the testator means to dispose of the wordly goods, which it has pleased God to bestow on him; and thus shews that he did not mean to die intestate as to any thing. He then gives to the children born or to be born of his marriage fifty cents each and
 
 no
 
 more; and thereby informs us very plainly, that he intended to exclude them from taking any other part of his estate. It is true that no exclusion of the heir or of those entitled to distribution, however positive and explicit, is effectual
 
 per se.
 
 For they take by law independent of, and even against the intent, whatever the testator does not give to some other person; and, therefore, only an effectual disposition in favor of another can defeat the heirs and next of kin. Nevertheless, these expressions and the purpose of exclusion aid in the attempt to put the proper construction on other words in the will, by which the testator endeavored to make a disposition of his property to another. They must prevent any restriction on the terms of another clause, whereby an intestacy
 
 pro tanto
 
 would be produced, and oblige the Court to receive even doubtful words in a sense which, if possible, will give the property to some one, and thus’ keep it from going to the heir. Here the language is not of dubious import, but clear enough; being that technically appropriate to the general gift of every thing that may not be legally given to any one else in particular. “The balance or residue of my property” takes in every thing, personal or real, not otherwise disposed of; especially this will must be so understood, when it is thus clear that the testator meant, that those, who would by law succeed to his estate, if not disposed of, should not have any of it. Our opinion therefore is, that in no event can those persons have any portion of this property; for the residuary clause is general and covers every thing.
 

 The material question is, who are entitled under that
 
 *63
 
 residuary clause. We have no doubt, in the first place, that the demand or application by the French donees by Attorney meets the requisition of the will. All the testator meant by requiring them or some one of the'm to apply for payment was to save his executor the trouble of seeking out for those persons in France, if in existence; and enable him to settle with them in this country. Probably the testator had no certain, knowledge, which of those relations of his were alive, if any; for he is able to describe his grand-nephews and nieces only by the general terms, “my sister Quenet’s grandchildren.” And from his uncertainty upon that point and the intention that his executor should not retain the estate indefinitely, for the want of a certain owner, he directs the application by his foreign legatees to be made within the reasonable period specified. But there is nothing to shew, that such application was to be by them in their own perj sons. If it appeared that some such thing was in the testa; tor’s contemplation as the means of identifying those persons, there would be more in the argument. But we see nothing of the sort; for if those persons had come here, it does not appear how they could have established, that they were the legatees, more than if they remained in France. It follows that the application, necessary to give them the benefit of the donations to them, may be made through any person appointed by themselves. Indeed, we think the words of the will itself expressly admit of the application by attorney, and shew that the testator expected it to be made in that manner. After giving the estate to all of Mrs. Q,.’s grand-children and directing the
 
 'payment
 
 to any one of them, who should apply for the same,- he afterwards adds, “should
 
 no one
 
 of my sister Q.’s grand-children, or any one duly authorised legally to receive the above property in their behalf, apply, &c.” then over to Mrs. Kron’s children, which shews that the person thus to be “authorized” to receive the property was “¡reo
 
 one”
 
 of his.sister’s grand-children, and therefore could have no authority but-as the proxy of those legatees. So far, then, as the demand is concerned, the foreign legatees have entitled themselves. And in respect of the personalty, there is no doubt, that, although
 
 *64
 
 aliens, they have capacity to take and hold for their own benefit; and, therefore, that the executor should pay over the same to their attorney, reserving what is proper for the sat'is-faction of the pecuniary legacies charged thereon.
 

 With the real estate we think it is different. The opinion of the Court is that it goes over, under the limitation, to Mrs. Kron’s children. If aliens can take land by devise, it is certain they cannot hold it, or an interest-in it against the sovereign or the grantee of the sovereign. Whether a devise to an alien will vest the estate so as to enable the sovereign to claim it against the heir at law or not, or, whether, if it will, the Trustees^of the University can, as grantees of the State, claim it as “property escheated,” are questions, on which, at present, we do not propose to give an opinion. For admitting the affirmative of both propositions to be true, yet we think that the gift to the Krons is of such a character as to prevent the devise to the foreign relations taking effect for the benefit merely of the State or the Uuniverity, or for any other purpose but for the benefit of those relations themselves. The gift over operates, like a conditional limitation, to make the first estate cease or to prevent it from arising, if it cannot legally be enjoyed by the testator’s favorite relations, and vests it immediately in the second class of relations, who are next in his affections, and. in that event, are subtituted by him for the former. Here, as vve have already seen, the heirs at law are cut off entirely. Then follows a general gift to alien relatives, of whose number, names or even existence, the testator seems not to have been certain; and of whose capacity to take or enjoy, he seems to have entertained doubts; for that is probably the meaning of the words, “duly authorized,” to do what?
 
 “legally
 
 to receive’ the property. If the will had stopped there, the land would have vested in those persons or such one of them as happened to be living; and then, of course, have gone according to the law regulating the rights of aliens in real estate. But it does not thus stop; but goes on to say, that if those aliens, in the first place, shall not apply within two years, then certain of his domestic relations shall have what was given to the former. Now, that of itself, is strong to shew the in
 
 *65
 
 tent, that the application, here spoken of, should be an effectual application;"one, under which the devisees could get and enjoy the land. For why give to one person, for the want of an application by a prior donee, when, if the application were made, it would have no more real operation on the interests of the applicant, than if it had been omitted altogether? And, in the second place, this view is strengthened by the phraseology already alluded to, “ legally to receive,” for that indicates the doubt in the testator’s mind of their' capacity, and teaches us that his purpose was really this; that his relations should have his estate at all events, and no other-person under any circumstances, while any of those relations existed; and, that among his relations, he gives to one class, as preferred before another class; but if, either they will not accept the gift within a reasonable period, or cannot by law take and hold it, then the second class, who can enjoy it, shall take instead of the former. Such seems to us to be very clearly the meaning of this will. It provides by a second limitation for the event of the first limitation not taking-effect, in fact and law, beneficially, within two years. Therefore it must be declared, that the personalty belongs to the grand-children of Mrs. Quenet and the realty to the two children of Mrs. Kron, subject nevertheless to the charges of the pecuniary legacies thereon. ■
 

 This brings us to an interesting and intricate question, which is, how the pecuniary legacies and annuities shall be raised and secured. There could be no difficulty, if the whole fund, personal and real, went, in the event, as the testator expected it would, that is, to the same persons. But, as it turns out, that by the will the former goes to one class of legatees and the latter belongs to another set of donees, the question arises, whether the realty is liable to the payment of any proportion of the debts and pecuniary legacies, until the personal estate be exhausted. Upon that question there was no argument at the bar. It is one, which we think, requires discussion, and therefore the cause is directed to stand over for argument on that point. In the mean while it seems proper we should say, that the pecuniary leg
 
 *66
 
 acies to Mrs. Kron, and Francis A. Delamothe and the annuities to them and others may safely and ought to be paid, provided the whole fund be sufficient to pay them all, by the executor out of any monies in his hands. The whole estate is charged with those sums, and the legatees and annuitants ought not to be compelled to await the adjustment of the contest between the owners of the different funds liable for their satisfaction.
 

 Upon the question respecting the slave David and his family, although the testator has expressed himself obscurely, we are of opinion, that he did not intend their emancipation, and that they form, necessarily, a part of the residue of the personal estate disposed of by the will.
 

 Per Curiam. Declared accordingly.